

**FILED**

JAMES J. WALDRON, CLERK

**MAY 23, 2016**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*

JUDICIAL ASSISTANT

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re: | Case No.:  15-10156  (JKS) |
| **JAMES C. HOFFMANN,** | Judge:    Hon. John K. Sherwood |
| Debtor. | |

**OPINION**

**APPEARANCES**:


Dean G. Sutton, Esq.
18 Green Rd.
PO Box 187
Sparta, New Jersey 07871
***Counsel for Debtor***


Udren Law Offices P.C.
Veroneque A. T. Blake, Esq.
Woodcrest Corporate Center
111 Woodcrest Road, Suite 200
Cherry Hill, New Jersey 08003-3620
***Counsel for Ocwen Loan Servicing LL,***
***as Servicer for Wells Fargo Bank, National Association***
***as Trustee for Option One Mortgage Loan Trust 2007-5,***
***Asset-Backed Certificates, Series 2007-5***

## THE HONORABLE JOHN K. SHERWOOD, BANKRUPTCY JUDGE

Under the Bankruptcy Code, a homeowner in bankruptcy cannot modify a first mortgage that covers only the borrower's "principal residence."  Where a mortgage is taken against real property that serves as more than the borrower's principal residence, such as a multi-family house, the mortgagee's claim can be modified or "crammed down" to the value of the property. Of course, debtors in bankruptcy prefer the flexibility and leverage that come with being able to modify a mortgage loan and mortgage lenders like the protection of the "anti-modification" provisions under the Bankruptcy Code.  In most cases, the result is clear as it is easy to determine whether a property is, or is not, a debtor's principal residence.  But in cases where a property serves as the debtor's principal residence <u>and</u> has actual and/or potential income generating capacity, the decision is not so easy.  This is one of those cases.

Ocwen Loan Servicing, LLC ("<u>Ocwen</u>"), as servicer for Wells Fargo Bank, National Association as Trustee for Option One Mortgage Loan Trust 2007-5, Asset-Backed Certificates, Series 2007-5, moves for a determination that the plan of reorganization filed by James C. Hoffmann (the "<u>Debtor</u>") impermissibly modifies its secured claim on the Debtor's principal residence in violation of the anti-modification provision of chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 1123(b)(5).[1]  The Debtor argues that cram down is allowed because Ocwen's claim is secured by property other than the Debtor's principal residence, namely a detached 420 square foot guesthouse on the same parcel as the principal residence.

---

[1] (*See* Mot. for Judgment on the Pleadings, ECF No. 43-1).  Ocwen moves pursuant to Federal Rule of Civil Procedure 12(c), which is made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012.  The Debtor takes no issue with the procedural posture of Ocwen's motion.

3

At the May 10, 2016 hearing on Ocwen's motion, the parties stipulated to the facts in the record and thus this matter is ready to be decided.  For the reasons set forth below, Ocwen's motion is granted.

## JURISDICTION

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) and (L).  Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

## FACTS AND PROCEDURAL HISTORY

In February 2007, the Debtor and his spouse refinanced their property at 123 Reeve Avenue, Bloomingdale, New Jersey (the "Property") by obtaining a loan in the principal amount of $350,000 from Residential Home Funding Corp.  The loan, which was secured by a first mortgage against the Property, was subsequently assigned to Wells Fargo Bank, National Association as Trustee for Option One Mortgage Loan Trust 2007-5, Asset-Backed Certificates, Series 2007-5.[2]  The Debtor defaulted on the loan and filed a chapter 11 petition on January 6, 2015.  Ocwen, as servicer of the loan, filed a claim in the amount of $507,985.04 on April 17, 2015.  The Debtor's plan of reorganization proposes to cram down Ocwen's claim to the value of the Property, which the parties have stipulated to be $276,000.[3]  Ocwen filed the instant motion

_____

[2] (*Id.* at ¶¶ 15-17).
[3] (*See* Chapter 11 Combined Plan and Disclosure Statement, ECF No. 25); (Order Fixing Value of Real Property, ECF No. 42).

in connection with its objection to confirmation, which seeks a determination that its mortgage cannot be modified as proposed by the Debtor's plan.

The Debtor cites the following evidence in support of his contention that the loan was not secured solely by his principal residence (and thus can be crammed down to the value of the Property).  First, the appraisal obtained in connection with the loan describes the Property as one-unit "with Accessory Unit." [4]   Second, the appraisal includes a building sketch that depicts the guesthouse, which it refers to as a "guest house/in law suite," and the appraiser took the guesthouse into account when assessing the value of the Property.[5]  Third, in the "Schedule of Real Estate Owned" in the loan application, the numbers "2-4" are entered under the "Type of Property" column.[6]  Finally, the Debtor filed a certification which states that the guesthouse was rented out intermittently between 2005 and 2010 (but not at the time of the closing on the mortgage in 2007).[7]

Ocwen relies on the following evidence in support of its position that the loan is secured only by the Debtor's principal residence.  First, the loan application states the Property consists of one unit and will be used as the Debtor's primary residence.[8]  The portions of the loan application that ask the Debtor to disclose rental income were left blank.  The affidavit of title submitted at the time of closing indicates that the Debtor and his spouse were "in sole possession of" the Property and had "no tenants or other occupants."[9]  Also, the mortgage states that the Debtor and his spouse:

---

[4] (*See* Jan. 19, 2006 Appraisal at 1, ECF No. 43-7).
[5] (*Id.* at 4, 5, and 10).
[6] (Uniform Residential Loan Application at 3, ECF No. 43-5).
[7] (Debtor's Certification in Support of Confirmation at ¶ 5, ECF No. 31-3).
[8] (Uniform Residential Loan Application at 1, ECF No. 43-5).
[9] (Aff. of Title, ECF No. 43-8).

shall occupy, establish, and use the Property as [their] principal
residence within 60 days after the execution of this Security
Instrument and shall continue to occupy the Property as [their]
principal residence for at least one year after the date of
occupancy, unless Lender otherwise agrees in writing, which
consent shall not be unreasonably withheld, or unless extenuating
circumstances exist which are beyond [their] control.[10]

The Debtor did not execute an assignment of rents in connection with the mortgage and the

mortgage does not include a "1-4 Family" or "Other" rider.[11]   The description of the Property in

the mortgage is, in its entirety:

123 Reeve Avenue, Bloomingdale, New Jersey 07043
TOGETHER WITH all the improvements now or hereafter erected
on the property, and all easements, appurtenances, and fixtures
now or hereafter a part of the property.   All replacements and
additions shall also be covered by this Security Instrument.  All of
the foregoing is referred to in this Security Instrument as the
"Property."[12]

Finally, although the guesthouse may have had intermittent tenants between 2005 and

2010, the Debtor acknowledges that it was not being rented when he refinanced the Property in

2007.  Presently, the guesthouse is unoccupied and appears to be in a state of disrepair.


## DISCUSSION

Section 1123(b)(5) provides that a chapter 11 plan may "modify the rights of holders of

secured claims, other than a claim secured only by a security interest in real property that is the

debtor's principal residence."[13]   The parties (and the Court) agree that the Third Circuit's

decision in *In re Scarborough*, 461 F.3d 406 (3d Cir. 2006), controls the meaning of the phrase

---

[10]  (Mortgage at 6, ECF No. 43-6).
[11]  (*Id*. at 2).
[12]  (*Id*. at 1-3).
[13]  11 U.S.C. § 1123(b)(5).

6

"other than a claim secured only by a security interest in real property that is the debtor's principal residence" in section 1123(b)(5).[14]  As discussed below, while the result of that case lends support to the Debtor, the Third Circuit's analysis compels the conclusion that Ocwen deserves the protection of section 1123(b)(5)'s anti-modification provision.

The facts in *Scarborough* were very different than those presented here.  The real property in question was a multi-unit dwelling which the debtor owned and occupied.  The debtor lived in the apartment on the first floor and rented out the apartment on the second floor. When the mortgage was delivered, the debtor also executed a "2-4 Family Rider (Assignment of Rents)" as additional security for the loan.[15]  Thus, it was apparent at the time of the closing that the upstairs unit was rented to a third party.  The lender knew this and expected this state of affairs to continue in the future.  The Third Circuit held that the anti-modification provision did not apply because the lender was secured by property other than the debtor's principal residence—the income-producing second floor apartment.  In determining whether a loan is "secured only by a security interest in real property that is the debtor's principal residence," the court held that there are two relevant inquiries: "(1) whether the claim is secured only by real property, and (2) whether the real property is the debtor's principal residence."[16]  Importantly, the court held that the relevant point in time for answering these questions is the time of the loan.

---

[14] *Scarborough* addressed the language of section 1322(b)(2), the anti-modification provision for chapter 13 upon which section 1123(b)(5) is based.  Both provisions use the same language and the legislative history to section 1123(b)(5) indicates it was enacted to make the treatment of mortgages in chapter 11 consistent with their treatment in chapter 13. *See* H.R. Rep. No. 103–835, at 46 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3354.
[15] *Scarborough*, 461 F.3d at 409.
[16] *Id.* at 411.

That is when the underwriting decision is made and that is when the lender must know whether its loan may be subject to modification.[17]

Here, the closing documents state clearly in several places that the Property was going to be used as the Debtor's principal residence and was not rented to third parties. The mortgage lender asked for, and had the right to rely on, these representations. None of the documents executed at the time of the loan indicate that the guesthouse was separate collateral for the loan. The Debtor did not execute an assignment of rents and the mortgage does not reference any property other than the real property located at 123 Reeve Avenue, Bloomingdale, New Jersey. The affidavit of title confirms that the Debtor and his spouse were in sole possession of the Property and that there were no tenants or other occupants. Even though the numbers "2-4" are entered under the "Type of Property" column in the "Schedule of Real Estate Owned" on the loan application, this is of limited probative value given the numerous representations throughout the loan application indicating that the Property consists of one unit and did not generate income.[18] For instance, adjacent columns in the same schedule that call for "Gross Rental Income" and "Net Rental Income" from the Property are left blank.[19] The "Net Rental Income" column in the income section of the loan application is also left blank.[20] Finally, although the guesthouse may have been rented out intermittently between 2005 and 2010, the Debtor concedes that it was vacant and did not generate any income at the time of the loan, which is the only time that matters under *Scarborough*.

---

[17] *Id.* at 412 (citing *In re Bulson*, 327 B.R. 830, 846 (Bankr. W.D. Mich. 2005)).
[18] (Uniform Residential Loan Application at 1, ECF No. 43-5).
[19] (*Id.* at 3).
[20] (*Id.* at 2).

The Debtor argues that the mere fact that the guesthouse had income generating potential at the time of closing is enough under *Scarborough* to allow the loan to be modified. But, as one bankruptcy court has noted, "the issue of whether a property was a single family residence is more than whether a property contains two units. The actual use of a property should be considered." *In re Lopez*, 511 B.R. 517, 520-21 (Bankr. N.D. Ill. 2014). The guesthouse on the Debtor's Property had many possible uses that would not produce revenue—a room for non-paying guests or family members, a studio, a workshop, a home office, or just extra storage space. Indeed, the representations by the Debtor at closing reflect that the guesthouse was and would be used as part of the Debtor's principal residence, not a separate income-producing unit. Thus, the evidence indicates that the loan was not secured by any property other than the Debtor's principal residence at the time of the loan.

*In re Merritt*, No. 11-18134, 2016 WL 1056063 (E.D. Pa. Mar. 16, 2016), is a recent case from this Circuit that supports the result reached here. In *Merritt*, the debtor argued that her mortgage could be modified because she rented out a room and did not consider the property to be her principal residence because she had relocated to Florida. However, the debtor's loan application indicated she would use the property as her primary residence and did not disclose any rental income. The mortgage also indicated that the property would be used as her primary residence and did not contain a "1-4 Family," "Second Home" or "Other" rider.[21] Since all of the representations in the closing documents indicated that the property was to be used only as

---

[21] *In re Merritt*, No. 11-18134, 2016 WL 1056063, at *6 (E.D. Pa. Mar. 16, 2016).

9

the debtor's principal residence, the district court affirmed the bankruptcy court's denial of the debtor's motion to modify the loan.[22]

For the same reasons, the Court finds that the Debtor's proposed modification of Ocwen's claim is prohibited under section 1123(b)(5). It would be inequitable to allow the Debtor to represent that the Property is a single-family, non-income producing principal residence and then disregard this representation in the Debtor's bankruptcy proceedings. Such a result would be contrary to the purpose of the anti-modification provision, which was intended to "encourage the flow of capital into the home lending market by affording anti-modification protection to home mortgage lenders."[23]

## CONCLUSION

Because Ocwen's claim is not secured by property other than the Debtor's principal residence, it may not be modified pursuant to 11 U.S.C. § 1123(b)(5). An order in accordance with this opinion will be entered.

*John K. Sherwood*

_____

JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE

Dated: May 23, 2016

_____

[22] *Id.*
[23] *Scarborough,* 461 F.3d at 410 (quoting *Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 331, 113 S. Ct. 2106, 124 L.Ed.2d 228 (1993) (Stevens, J., concurring)); *see also In re Ferandos,* 402 F.3d 147, 151 (3d Cir. 2005) ("The legislative history of § 1322(b)(2) 'indicates that it was designed to protect and promote the increased production of homes and to encourage private individual ownership of homes.'") (quoting *In re Davis,* 989 F.2d 208, 210 (6th Cir. 1993)).

10